IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERRY G. MARKOPOULOS<br>7307 Riviera Cove<br>Lakewood Ranch, FL 34202,<br><br>    *Plaintiff,*<br><br>  v.<br><br>POLONIA BANK<br>3993 Huntingdon Pike, Suite 300<br>Huntingdon Valley, PA 19006,<br><br>ROBERT J. WOLTJEN<br>Polonia Bank<br>**Chairman of Board of Directors**<br>3993 Huntingdon Pike, Suite 300<br>Huntingdon Valley, PA 19006,<br><br>JOSEPH T. SVETIK<br>Polonia Bank<br>President & CEO<br>3993 Huntingdon Pike, Suite 300<br>Huntingdon Valley, PA 19006,<br><br>    &<br><br>KENNETH J. MALISZEWSKI<br>Polonia Bank<br>**Senior Vice President and Chief<br>Lending Officer (former)**<br>3993 Huntingdon Pike, Suite 300<br>Huntingdon Valley, PA 19006,<br><br>    *Defendants.* | :<br>: Civil Action<br>:<br>:<br>:<br>: No. _____<br>:<br>:<br>:<br>: Jury Trial Demanded<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

Plaintiff Jerry G. Markopoulos, by his undersigned counsel Bochetto &

Lentz, P.C., brings the following Complaint against defendants Polonia Bank,

Robert J. Woltjen, Joseph T. Svetik, and Kenneth J. Maliszewski. In support of his Complaint, Plaintiff states the following:

## I. The Parties

1.     Plaintiff Jerry G. Markopoulos is an individual residing at 7307 Riviera Cove, Lakewood Ranch, Florida 34202. Markopoulos is a licensed retail mortgage broker in both Pennsylvania and Florida. For diversity jurisdiction purposes, Markopoulos is a Florida citizen.

2.     Defendant Polonia Bank ("Polonia" or the "Bank") is a federally-chartered stock savings bank, with its principle place of business at 3993 Huntingdon Pike, Suite 300 Huntingdon Valley, Pennsylvania 19006. For diversity jurisdiction purposes, Polonia is a citizen of Pennsylvania and Maryland.

3.     Defendant Robert J. Woltjen is the Chairman of the Bank's Board of Directors, and also serves as Board Chair of the Bank's parent holding corporation, Polonia Bancorp, Inc. For diversity jurisdiction purposes, Woltjen is a New Jersey citizen.

4.     On May 18, 2015, Polonia Bancorp appointed defendant Joseph T. Svetik as the Bank's President and Chief Executive Officer. Svetik also serves on the Boards of Polonia Bank, Polonia Bancorp, and Essa Bank & Trust. For diversity jurisdiction purposes, Svetik is a Pennsylvania citizen.

5.     Defendant Kenneth J. Maliszewski served as a Senior Vice President and as the Bank's Chief Lending Officer. On information and

belief, Maliszewski retired or resigned in June 2015. For diversity jurisdiction purposes, Maliszewski is Pennsylvania citizen.

## II. Jurisdiction and Venue

6.     Because there exists complete diversity of citizenship between Plaintiff and all Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs, the Court has jurisdiction of this action under 28 U.S.C. § 1332(a)(1).

7.     Venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within the geographical region embraced by this District. *See* 28 U.S.C. § 1391(b)(2).

## III.   Factual Background

8.     In the mid-1990s, Markopoulos became an early pioneer in marketing and originating residential mortgage loans through the internet.

9.     In 1997 Markopoulos began a successful 10-year relationship with Polonia in which he originated mortgage loans that his company "brokered" to the Bank for funding. In 2007, defendant Maliszewski approached Markopoulos and suggested establishing a more formal relationship between the Bank and Markopoulos.

### A.  The Terms of Markopoulos's Employment Agreement with Polonia Bank

10.     Through a December 1, 2007 three-page agreement (the "Employment Agreement"), signed on the Bank's behalf by defendant Maliszewski, the Bank employed Markopoulos (as an independent contractor)

to serve as the "General Sales and Operations Manager" of the Bank's "online mortgage origination department" (the "Internet Department"). [Exhibit "1" (Employment Agreement)].

11.    The Employment Agreement defined Markopoulos's responsibilities to encompass the "overall ... Management of the online mortgage origination department, which is to include pricing, advertising, loan production, sale of Brokered loans, investor relations, guidelines, [and] coordination of department employees." [Exhibit "1" at p. 3].

12.    The Employment Agreement emphasized that Markopoulos was being employed as Manager of the Bank's Internet Department with the expectation that he would "expand and build on the current borrowers and create the environment of the new 'POLONIA BANK INTERNET CUSTOMER.'" *Id.*

13.    In addition to health insurance, disability, and other standard employee benefits, the Employment Agreement set forth a "Compensation" formula with three components: (1) an annual $108,000 salary; (2) commissions and bonuses (of various percentages) based on mortgage loans originated by the Internet Department each year; and (3) a "Retention Bonus" of .05% of the face amount of all mortgage loans originated by the Internet Department in prior years and that remained in the Bank's loan portfolio:

# COMPENSATION:

## SALARY &  COMMISSION/BONUSES
** based on overall new loan production and retention of existing mortgage clients.

### A. SALARY

   1. $108,000.00

### B. COMMISSION/BONUS:

   1. .125% OF ANNUAL PORFOLIO LOAN PRODUCTION (LOANS KEPT).
   2. 15% OF  GROSS FEE PAID FOR BROKERED LOANS.

### C. RETENTION BONUS:

   1. .05% OF PRIOR YEARS IN HOUSE LOAN PRODUCTION.

[Exhibit "1" at p. 1].

   14.   This provision thus established the formula that governed the compensation the Bank owed Markopoulos under the Employment Agreement.

     **B. Markopoulos successful management of the Bank's residential mortgage loan Internet Department**

   15.   From the beginning of its operations, through Markopoulos' experience and skilled management the Internet Department generated substantial mortgage loan originations for the Bank.

   16.   Under Markopoulos's management, the Internet Department originated $149 million in mortgage loan sold to the Federal Home Loan Bank system's "Mortgage Partnership Finance" program, originated $144 million in loans added to the Bank's own portfolio, and generated

approximately $14 million in gross revenue for the Bank. [Exhibit "2" (Resume)].

### C. Markopoulos's demands for full payment of his commissions and bonuses, and the Bank's retaliatory termination of his employment

17.    From the inception of his employment, the Bank was typically in arrears in paying Markopoulos's commissions and bonuses. Markopoulos nonetheless relied on the Bank's commission and bonus statements and calculations, and trusted that the Bank was paying him all commissions and bonuses owed under the Employment Agreement's Compensation formula.

18.    In June 2014, Markopoulos met with regulators from the Office of the Comptroller of the Currency, who requested from him information concerning the Internet Department's operations and financial results. The OCC regulators advised Markopoulos that they were under the impression that the Internet Department was unprofitable. On information and belief, that false impression was conveyed to the regulators by the Bank's senior management.

19.    In response to the OCC regulator's request for the Internet Department's profit and loss ("P&L") statements, Markopoulos advised that these financial records would be maintained by the Bank's CFO, Paul Rutkowski. The OCC regulators responded that Rutkowski denied possessing the Internet Department's P&L information, and requested that Markopoulos himself generate the requested financial data.

20.    Markopoulos advised the OCC regulators that he would provide his loan production and commission reports to his own certified public accountant to prepare P&L statements for the Internet Department.

21.    Markopoulos did not receive a final and complete report from his CPA until May 2015. Based on the CPA's final report, Markopoulos determined that the Bank owed him $194,051 in commissions and bonuses for loans originated by his Internet Department in 2013, and $155,020 for loans originated in 2014. [Exhibit "3" at pp. 2-3 (spreadsheets)].

22.    The CPA's final report also indicated to Markopoulos that the Bank had been concealing the Internet Department's profitability from both himself and from the Bank's regulators.

23.    Markopoulos promptly requested full payment of the $349,427 that the Bank owed him for 2013 and 2014 under the Employment Agreement's Compensation formula.

24.    At a meeting in June 2015, defendant Joseph T. Svetik (the Bank's President and CEO) angrily and summarily rejected Markopoulos's demand for the commissions and bonuses owed him for 2013 and 2014. Svetik further advised Markopoulos that the Bank was repudiating its contractual agreement to pay Markopoulos any of the "Retention Bonus" component of his compensation. For 2013 and 2014, that unpaid Retention Bonus totaled $122,303. [Exhibit "3" at p. 1 (highlighted in yellow)].

25.   Shortly following that meeting, defendant Maliszewski advised Markopoulos that the Bank's attorney (Henry E. Van Blunk) would be drafting a revised compensation agreement.

26.   Over the next several months, Keven J. Gallagher, who had recently been employed as the Bank's Senior Lending Officer, repeatedly promised Markopoulos that the matter of his past-due commissions and bonuses would be resolved. Markopoulos repeatedly told Gallagher that he wanted what he was owed under the Employment Agreement's Compensation formula – nothing more, nothing less.

27.   Those promises were merely a stall tactic. On October 26, 2015, at Svetik's direction, Gallagher offered Markopoulos $21,000 in purported full satisfaction of the outstanding commissions and bonuses owed Markopoulos, and only on the condition that Markopoulos immediately sign a revised employment agreement. Markopoulos responded that before signing any revised agreement, he would need his own attorney to review the Bank's proposal.

28.   Gallagher replied that Svetik had demanded that Markopoulos either agree to those terms or leave the building by 4:00 p.m. that afternoon. Markopoulos refused to accede to Svetik's bullying tactics, reasserting that he would not relinquish his right to have his own lawyer review any revised agreement and continuing to demand full payment of the commissions and

bonuses that the Bank owed him under the Employment Agreement's Compensation formula.

29.     In retaliation for his refusal to accede, Gallagher (at Svetik's command) verbally told Markopoulos that his employment as the Internet Department's Manager was terminated. Gallagher confirmed Markopoulos's termination through an October 29, 2015 letter, which purported to explain: "[a]s indicated the organization is changing its focus and pursuing a different direction." [Exhibit "4"].

30.     With Markopoulos' termination, the Employment Agreement's Compensation formula determines and governs the Bank's contractual obligations to Markopoulos.

31.     Despite his continued, repeated demands, the Bank has refused to pay Markopoulos any portion of the $349,427 that it owes him under the Employment Agreement's Compensation formula, thereby unilaterally breaching the Employment Agreement.

## COUNT I
### (Breach of Contract)
### Jerry G. Markopoulos v. Polonia Bank

32.     Plaintiff incorporates by reference all preceding Paragraphs of this Complaint.

33.     In December 2007, the Bank offered and Markopoulos subsequently accepted employment as Manager of the Bank's Internet

Department, shutting down his own, successful internet mortgage lending operations.

34.     In consideration for his services and development of the Internet Department, the Bank promised to pay Markopoulos all amounts owed under the calculations set forth in the Employment Agreement's Compensation formula.

35.     Despite Markopoulos's repeated demands that the Bank pay him all amounts owed under the Employment Agreement's Compensation formula, the Bank has refused to pay these sums.

36.     By refusing to pay Markopoulos all amounts due under the Employment Agreement's Compensation formula, which currently total $349,427, the Bank has materially breached its contractual obligations to Markopoulos and is thus liable to Markopoulos for damages.

WHEREFORE, Plaintiff Jerry Markopoulos demands that the Court enter judgment in his favor and against defendant Polonia Bank in an amount in excess of the Court's $150,000 arbitration threshold, together with the costs and expenses that he has incurred in bringing this action, and all other relief that the Court finds appropriate, just, and equitable.

## COUNT II
### (Claim under Wage Payment and Collection Law)
### Jerry G. Markopoulos v. Polonia Bank, Robert J. Woltjen, Joseph T. Svetik, and Kenneth J. Maliszewski

37.     Plaintiff incorporates by reference all preceding Paragraphs of this Complaint.

38.    Under Pennsylvania's Wage Payment and Collection Law ("WPCL"), every employer must pay in full all wages owed to its employees and independent contractors. 43 P.S. § 260.3(a).

39.    The WPCL defines "Wages" to include "all earnings of an employee, regardless of whether determined on time, task, piece, commission, or other method of calculation." 43 P.S. § 260.2a.

40.    The commissions and bonuses that the Bank owes Markopoulos are "Wages" within the WPCL's scope that the Bank was required to pay Markopoulos in full, no later than on his termination.

41.    The WPCL defines an "Employer" to include "every person, firm or partnership, association, corporation receiver … or any of the above mentioned classes employing any person in this Commonwealth." 43 P.S. § 260.2(a).

42.    Defendant Polonia Bank is a Pennsylvania employer within the WPCL's scope and thus subject to the Act's penalties and sanctions.

43.    As Chairman of the Bank's Board of Directors, defendant Robert J. Woltjen improperly rejected or instructed others to reject Markopoulos's repeated demands for payment of all amounts owed under the Employment Agreement's Compensation formula, including but not limited to amounts owed in the form of the Retention Bonus. Through these actions, Woltjen bears direct responsibility for the Bank's refusal to pay Markopoulos the full

compensation to which he is entitled under Employment Agreement, thus subjecting Woltjen to individual and personal liability under the WPCL.

44.    As the Bank's Chief Executive Officer and President, defendant Joseph T. Svetik improperly rejected and instructed others to reject Markopoulos's repeated demands for payment of all amounts owed under the Employment Agreement's Compensation formula, including but not limited to amounts owed in the form of the Retention Bonus. Through these actions, Svetik bears direct responsibility for the Bank's refusal to pay Markopoulos the full compensation to which he is entitled under Employment Agreement, thus subjecting Svetik to individual and personal liability under the WPCL.

45.    As the Bank's former Senior Vice President and Chief Lending Officer, defendant Kenneth J. Maliszewski bears direct responsibility for the Bank's refusal to pay Markopoulos the full compensation to which he is entitled under the Employment Agreement's Compensation formula, thus subjecting Malisvewski to individual and personal liability under the WPCL.

46.    Following Markopoulos's reasonable demands and no later than on his termination, the Bank was obligated to pay Markopoulos all sums due under the Employment Agreement's Compensation formula, which currently total $349,427.

47.    In addition, the WPCL imposes liquidated damages of an additional 25% ($87,356) of the full compensation that the Bank has

improperly withheld from and has refused to pay Markopoulos. 43 P.S. § 260.10.

**WHEREFORE**, Plaintiff Jerry G. Markopoulos demands that the Court enter judgment in his favor and against defendants Polonia Bank, Robert J. Woltjen, Joseph T. Svetik, and Kenneth J. Maliszewski in an amount in excess of the Court's $150,000 arbitration threshold, together with the attorneys' fees, costs, and expenses that he has incurred in bringing and maintaining this action, the additional statutory damages authorized by the WPCL, and all other relief that the Court finds appropriate, just, and equitable.

**COUNT III**
(Demand for an Accounting)
Jerry G. Markopoulos v. Polonia Bank

48.   Plaintiff incorporates by reference all preceding Paragraphs of this Complaint.

49.   By the terms of the Employment Agreement, the Bank agreed to pay Markopoulos all consideration owed under the calculations set forth in the Employment Agreement's Compensation formula. [Exhibit "1" at p. 1].

50.   Markopoulos depended on the Bank for an accurate accounting of the commission, bonus, and retention bonus components of his compensation, which were based on the volume of mortgage loans originated by the Internet Department, the fees received by the Bank on account of

those originated loans, and the volume of such loans retained by the Bank in its own portfolio.

51.     Markopoulos relied on the Bank's accurate and honest calculation of the commissions and bonuses owed him under the Employment Agreement's Compensation formula.

52.     Because of the Bank's superior position and duty to provide Markopoulos with accurate, complete, and current financial reporting of the Internet Department's loan originations, fees received from the sale of those loans, and the volume of loans retained, the Bank stood in fiduciary relationship to Markopoulos, requiring the Bank's utmost good faith and loyalty towards Markopoulos.

53.     In light of the Bank's fiduciary relationship, Markopoulos is entitled to an equitable accounting of the Internet Department's loan origination history, all fees generated through those loans, and all originated loans retained in the Bank's portfolio.

**WHEREFORE**, Plaintiff Jerry G. Markopoulos demands that the Court enter judgment in his favor and against defendant Polonia Bank, and direct Polonia to provide a complete accounting of all mortgage loans originated by the Internet Department, and the associated revenues derived from those loans, for the period from December 1, 2007 through October 26, 2015, together with all other related relief that the Court finds appropriate, just, and equitable.

BOCHETTO & LENTZ, P.C.

By: _____Thomas E. Groshens_____
Gavin P. Lentz (Pa. 53609)
Thomas E. Groshens (Pa. 51118)
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
gplentz@bochettoandlentz.com
tgroshens@bochettoandlentz.com

*Attorneys for Plaintiff,*
*Jerry G. Markopoulos*

Dated: December 9, 2015